|  | AUSA: | Ryan Particka | Telephone: (313) 226-9635 |
|---|---|---|---|
| AO 91 (Rev. 11/11)  Criminal Complaint | Special Agent: | Morgan Pilat | Telephone: 734-358-0960 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America

v.

Brandon Lamar Robinson

Case: **2:25–mj–30581**
Assigned To : **Unassigned**
Assign. Date : **9/12/2025**
Description: **USA V SEALED (LLH)**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____January 2015 - February 2024____ in the county of __Wayne and Elsewhere__ in the ____Eastern____ District of _____Michigan_____, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. 1343 | Wire Fraud |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Morgan Pilat
_____
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: ____September 16, 2025____

_____
*Judge's signature*

City and state: __Detroit, Michigan__

____Elizabeth A. Stafford -U.S. Magistrate Judge____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Morgan Pilat, being duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.      I am a Special Agent with the U.S. Department of Education – Office of Inspector General (ED-OIG) assigned to the Ann Arbor, Michigan Field Office, duly appointed according to law and acting as such. As part of my duties, I am authorized to conduct investigations, audits, and inspections in connection with the administration and enforcement of laws, regulations, orders, contracts, and programs in which the U.S. Department of Education (hereinafter DoE) is, or may be, a party of interest, and perform other duties on behalf of the U.S. Secretary of Education. My chief responsibility is the investigation of fraud involving federally funded grants and loans for education. Prior to this assignment, I was employed as a Special Agent with the U.S. Postal Service – OIG for over four years investigating fraud, waste, and abuse, with a focus on financial fraud. Previously, I served as a private sector anti-money laundering investigator and as a U.S. Secret Service uniformed officer. I have conducted numerous investigations including U.S. Mail, check, bank fraud, and insurance fraud schemes.

2.      The facts set forth in this affidavit come from my personal observations, my training and experience, and information obtained from investigative sources, records, and information relayed from other members of the investigative team.  This affidavit is submitted for the limited purpose of showing that there is sufficient probable cause for the requested complaint, and it does not set forth all facts known to law enforcement related to this investigation.

3.      The affidavit is limited to probable cause that BRANDON LAMAR ROBINSON ("Robinson") (DOB XX/XX/1983) intentionally perpetrated a financial aid fraud scheme against

DoE and an unemployment insurance (UI) fraud scheme against the Department of Labor (DOL) in violation of Title 18 U.S.C. § 1343 (Wire Fraud).

## BACKGROUND

### Overview of Federal Student Aid Fraud Schemes

4.      In Federal Student Aid (FSA) fraud schemes, fraud ringleaders recruit "straw" students to fraudulently obtain FSA (Federal Pell Grants and Federal Direct Student Loans) "Title IV" funds. The straw students provide their personal identifying information (PII) to ringleaders, who in-turn use that information to enroll the straw students in Online college courses. Once the ringleader enrolls the straw student, they apply for FSA Online using the straw student's personal information. The ringleader then completes and submits the required Online Free Application for Federal Student Aid (FAFSA) for each straw student. The FAFSAs commonly contain materially false statements, including false representations that the student possesses a high school diploma or general educational development (GED) certificate, or false representations that the student intends to use the FSA funds to attend school, when neither the student nor the ringleader have intentions of using the FSA funds for school related purposes.

5.      During the FSA scheme, straw students do not complete their coursework and have no intent to go to school, though, oftentimes, the ringleader will complete the straw students' coursework or log onto student's Online school portals for attendance purposes, so as the straw students will continue to appear to be eligible to receive FSA.

6.      Relying on the false representations, DoE distributes FSA funds to the straw students' colleges for tuition. The colleges then withhold the cost of tuition and distribute the balance of the funds directly to the students, which are intended to cover the students' living expenses. The balance is typically disbursed to the students in the form of a debit card or a

financial aid refund check, which are mailed to students through the U.S. Mail, or via direct deposit into a financial account of their choosing.

7. Ringleaders ensure FSA funds are funneled to themselves once disbursed to the straw students. In FSA fraud schemes that involve financial aid refund checks or debit cards sent through U.S. mail, the ringleaders typically cause the refunds to be mailed to an address they maintain some control over. Once the straw student's financial aid refund check is received, the ringleader often meets with the straw student at a check cashing facility and has the straw student endorse and cash the check. Once the check is cashed, the straw student splits the proceeds with the ringleader. In FSA fraud schemes that involve financial aid refund direct deposits, the ringleaders typically have control of the bank account to which funds are disbursed, cause funds to be electronically transferred from the accounts, or have the funds withdrawn as cash. If FSA is received via mail or direct deposit to an account owned *only* by the straw student, the ringleader will arrange the exchange of payment from the student by electronic means, such as CashApp, or an in-person cash transfer.

<u>Overview of Unemployment Insurance System</u>

8. The Social Security Act of 1935 initiated the federal and state Unemployment Insurance system. The system provides benefits to individuals who are unemployed for resources beyond their control. The purpose of the Unemployment Insurance system is to lessen the effects of unemployment through cash payments made directly to laid off workers, and to ensure that life necessities are met on a weekly basis while the worker seeks employment. The various state unemployment insurance agencies responsible for administering the UI programs are commonly referred to as State Workforce Agencies (SWA).

9.  State unemployment systems and benefits are joint state and federal enterprises largely financed by taxes on private employers located in the state.  In 2020 and 2021, the federal government provided significant supplemental benefits to the states as a result of the COVID-19 pandemic.  Beginning in or about March 2020 and continuing through September 4, 2021, the Families First Coronavirus Response Act; Coronavirus Aid, Relief and Economic Security Act; and the American Rescue Plan Act of 2021 created federal programs that allowed for the significant outlay of federal funds flowing to and through the states to offset the historic need for unemployment benefits by the American workforce.  Collectively, these benefits are often referred to as Pandemic Unemployment Assistance (PUA).

10.  Normally (in the absence of fraud), an unemployed worker initiates an Unemployment Insurance claim. This can be accomplished by submitting a claim in person, over the telephone, or via the Internet.  Currently, most Unemployment Insurance claims are filed online via the Internet through the states' UI portal.  When a claimant using an internet protocol (IP) address registered in Michigan files a claim with an out-of-state UI agency, the servers used to process those claims are located outside the state of Michigan, which inherently involves the interstate transmission of information via wire.  For example, an Arizona or California UI claim filed from an IP address registered to a Michigan residence will be processed electronically through a server located outside the state of Michigan.

11.  To be eligible for Unemployment Insurance benefits, the worker must demonstrate a certain level of earnings in several quarters immediately preceding the application. The number of benefits that an Unemployment Insurance claimant might be eligible for depends on a variety of factors, including but not limited to the length of his or her previous employment and the number of wages he or she earned.

12. The SWA will either approve or reject an UI claim based on the application made by the unemployed worker. If the respective SWA approves an UI claim, the claimant is required to re-certify the claim via telephone of internet at various times during the life of the claim. The worker must also certify that he or she is still unemployed and actively seeking work. One way in which Unemployment benefits are provided to a claimant is with a UI debit card, issued by a financial institution contracted by the respective state, which is mailed to the claimant through the U.S. Postal Service.

13. Additionally, a claimant can provide the State Unemployment Insurance Agency with a bank routing number and bank account number so his or her Unemployment Insurance benefits can be transferred via electronic funds transfers (EFT) into his or her bank account. All EFTs of Unemployment Insurance benefits to UI claimants involve the transmission of electronic signals through the various SWA and financial institution data servers. For example, all EFTS of Unemployment Insurance benefits to Michigan, California or Arizona Unemployment Insurance claimants—whether via a Bank of America (BOA) debit card or via a claimant-provided bank account—involve the transmission of electronic signals through one of BOA's two data centers, which are located in Virginia and Colorado, and from those data centers back to banks and/or ATMs located for example, in Michigan. These are interstate wire communications.

14. Based on the ED-OIG and DOL-OIG investigation there is probable cause to believe that Robinson knowingly and intentionally perpetrated financial aid fraud schemes against DoE (beginning in or around January 2015 and continuing through at least February 2024), as well as a UI fraud scheme against the DOL (beginning in April 2020 and continuing through March 2023), in the Eastern District of Michigan. To facilitate this scheme, Robinson made use of the PII of multiple individuals to defraud and obtain money or property, as well as through the

submission of false and fraudulent Title IV documentation, (the processing and payment of which involved the use of the mails and interstate wire transmissions), and through the filing of dozens of fraudulent UI claims.

## SUMMARY OF INVESTIGATION

15. Beginning in or around January 2015, and continuing through at least February 2024, in the Eastern District of Michigan, Southern Division, and elsewhere, the defendant, Robinson, with the intent to defraud, knowingly devised and executed a scheme to obtain money and property by means of materially false and fraudulent pretenses and representations. The purpose to defraud was for the defendant to unlawfully obtain FSA benefits to which he was not entitled. In executing the scheme, the defendant caused the transmission of writings, signals, and sounds by means of wire communication in interstate commerce.

16. Specifically, since 2015, Robinson submitted fraudulent FSA claims for more than 1290 individuals, involving over 100 schools in 24 states. As a result of the scheme, Robinson fraudulently caused more than **$16,000,000** in FSA benefits to be awarded, with approximately **$10,521,189.05** disbursed to date. Additionally, the parallel investigation by DOL-OIG determined from April 2020 through March 2023, over 100 fraudulent UI claims were filed in multiple states by Robinson, causing the disbursement of over $1 million dollars earmarked for Pandemic Unemployment Assistance/UI benefit payments.

17. Robinson's computer, and physical address on Telegraph Road, were connected to the distinct AT&T Internet Protocol (IP) address 99.121.88.208 ("IP.99") (and it's IPv6 equivalents), which were responsible for the creation and facilitation of FSA and UI fraud in the case. In fact, during the search warrant at Robinson's residence, his standalone computer was located with the screen on and opened to the secure student login for Wayne County Community

College (WCCC), the school most affected in the investigation. Prior to residing at this address, the same fraud was conducted via his previous address on Timberidge Circle, via Spectrum IP 97.70.137.7 ("IP.97"). The aforenoted IPs associated with Robinson were linked with the submission of FAFSAs, FSA, student logins in various online learning platforms, the creation of emails, the accessing of bank records, and the sending of electronic money transfers from others' bank accounts, after disbursement of FSA, to his own personal bank account. Robinson was also identified via ATM footage on at least 36 different dates, withdrawing funds from multiple debit cards associated with the scheme.

18.     Once a FAFSA is submitted, and FSA is applied for, it is sent via interstate wire to the FAFSA Processing System server located in Clarksville, Virginia. For example, on or about the dates listed below, Robinson, for the purpose of executing and attempting to execute and artifice to defraud above, caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, or sounds, as described in the following chart:

| Date | Description of Document | Applicant Location | Recipient Location |
|---|---|---|---|
| 1/10/2022 | FAFSA filed for Dxxxxxx Rxxx | Detroit, Michigan (IP 99.121.88.208) | Department of Education, Clarksville, Virginia |
| 6/7/2022 | FAFSA filed for Dxxxxxx Dxxxxxxxxxxxxx | Detroit, Michigan (IP 99.121.88.208) | Department of Education, Clarksville, Virginia |
| 9/20/2022 | FAFSA filed for Rxxxxx Cxxxxx | Detroit, Michigan (IP 99.121.88.208) | Department of Education, Clarksville, Virginia |

19.     This investigation was initiated in 2022, after Affiant received a complaint from a Nunez (Nunez) Community College (located in Chalmette, Louisiana) official. The complainant stated they received an identity theft complaint from Detroit, Michigan victim, "T.B," who reported receiving a letter from DoE stating that FSA was taken out in his name from Nunez, despite never applying for FSA, never attending the school, and never living in Louisiana.

20.     The investigation determined other trends, indicative of fraud, among the information entered by individuals in their FAFSA and FSA ID applications. These items included the submission of identical shared answers to challenge questions and passwords for FSA profile login, shared high school information, and shared naming conventions for FSA usernames. Postsecondary academic records of the schools used also indicated the recipients were enrolled in similar Online programs (i.e., "General Studies," "Business Association," "Basic Business," "Business Administration and Arts," etc.). and either received a 0.0 GPA or failed/withdrew from their classes.

21.     Additionally, for purposes of appearing eligible and continuing to receive FSA, IP.99, and its IPv6 equivalents, and IP.97, belonging to Robinson, were used to access courses for recipients through colleges' online course management systems, such as *Blackboard* and *Canvas,* often on the same day around the same time. For example, WCCC's, *Blackboard,* was accessed by IP.97 ten times on June 2, 2019, for multiple people for the same classes, minutes apart. The case also revealed Robinson's other emails *cashavebran1221@att.net, princeofnking@yahoo.com*, *brandonrobinson1221@yahoo.com*, and *bholiday1221@gmail.com* were used in the facilitation of FSA fraud and the UI fraud.

22.     As mentioned, after FSA documentation is submitted, processed, and approved, DoE disburses remaining funds directly to the participating institution, which are transferred via wire or check to the student's financial account. The investigation revealed FSA funds were disbursed into bank accounts owned or accessible by Robinson via IP.97 and IP.99 or transferred via electronic transfer into accounts owned or accessible by Robinson, and/or were immediately withdrawn as cash via Michigan ATMs. In addition to online access to bank accounts, the

investigation determined debit cards disbursed with FSA, from colleges nationwide, were physically mailed to addresses controlled by Robinson, and later accessed via IP.99.

23.     The investigation also determined the accounts of the FSA recipients were used to send electronic money transfers *to* Robinson, as seen by his personal BMTX account, ending 7012, into which $11,200.00 in Title IV was disbursed in 2018. Aside from shopping and gambling usage, this account, which was accessed via IP.99 and IP.97 from October 2018 through February 2023 and affiliated with Robinson's email *princeofnking@yahoo.com*, was used predominantly for ATM cash withdrawals and electronic money transfers from FSA recipients. Oftentimes, funds were electronically transferred to Robinson from FSA recipients, either the same day or closely following a Title IV disbursement.

24.     In addition to electronic transfers, funds were typically withdrawn via ATM after the disbursement of FSA. One Bank of America ATM location, on Telegraph Road, was used to withdraw cash from at least six debit cards, in the names of six different individuals awarded FSA, from June 20, 2022, to November 23, 2022, from schools in and out of state. Robinson is seen on ATM video at this location withdrawing funds 36 times, from the aforenoted debit cards.

a.   For example, on June 17, 2022, a $1,646.80 FSA refund from WCCC, intended for "B.G.", was disbursed into the Meta Bank account ending 5491, in the name of B.G.. On June 20, 2022, and June 21, 2022, Robinson is seen withdrawing the cash from the account to its entirety. B.G.'s FAFSA, FSA, and Meta Bank

account were accessed via IP.99 from 2016 to 2022.



b. On November 17, 2022, a $5,599,40 FSA refund from WCCC, intended for

"E.R.," was disbursed into a Bancorp account ending 2547, in the name of E.R.

On the same day, and consecutive days following, November 17, 2022, through

November 22, 2022, Robinson is seen withdrawing the cash from the account to

its entirety. E.R.'s FAFSA and FSA were accessed via IP.99 from 2021 – 2022:



25.     Furthermore, straw students in the case were interviewed and either told agents

they were a victim or that they were willing participants. For instance, on March 30, 2022, ED-

OIG Agents interviewed S.R., who stated they willingly provided their PII to an individual

referred to as "School Boy" to earn extra cash through a "school scheme." S.R. said he was promised a monetary spilt of the profit from the FSA 'earned' for the usage of their PII, yet S.R. never received any money. The case later determined S.R. was disbursed approximately $10,000.00 in FSA and approximately $20,000.00 in UI in April 2020, both using IP.99 for filing purposes. Also, the State of Michigan Fraud Investigation Unit (SOM FIU) reported that on June 23, 2020, Robinson used the Bank of America UI debit card, intended for S.R., to make a $1,000.00 cash withdrawal, from the aforenoted ATM on Telegraph Road on June 23,2020.



26.     Similarly, on May 6, 2020, the SOM FIU reported a UIA claim was filed from IP.99 using the PII of "J.C." This UI claim for "J.C." was paid out approximately $32,500.00. J.C. was also disbursed over $11,625.00 in FSA via WCCC. The investigation determined on July 25, 2021, Robinson used the Bank of America UI debit card, intended for J.C., to make a $920.00 cash withdrawal from the aforenoted ATM on Telegraph Road on July 25, 2021.



27.     On November 7, 2023, ED-OIG and DOL-OIG Special Agents executed search warrants at Robinson's residence on Telegraph Road. Robinson refused to be interviewed at this time. During the search, agents seized physical and electronic evidence from the location that contained elements of the FSA scheme. As mentioned, at this time, Robinson's standalone computer was located with the screen on and opened to the secure student login for WCCC, the school most affected in the investigation. Next to this computer were blue plastic baskets, labeled with the names of the defrauded schools in the case. Within these bins, as well as located throughout the residence, were thousands of index cards handwritten with multiple individuals' PII, hundreds of debit cards, and multiple notes underlying the scheme.

a.  **Physical Evidence**. Physical evidence seized from this location included elements of the FSA fraud. First, located throughout the residence, and in bins organized and labeled by school next to Robinson's computer, were over 1,000 index cards handwritten with PII of individuals used in the scheme, to include password/challenge question, school, runner, and dollar amount information. Robinson referenced these PII index cards as "info cards" in text messages to other defendants. Photographs of these PII index cards appeared in the electronic devices

multiple members of the scheme and were sent in text messages between members. Second, also located were hundreds of debit cards disbursed with FSA for case recipients, many of which were still attached to their associated mailings, in other's names, to include those associated with colleges that have students' pictures on them. Lastly, other physical evidence found included loose paper and notebooks with PII enclosed, a receipt book filled out with dollar amounts and names of runner/students and typed-out itemized lists identifying the various steps in the FSA process with checkmarks on them, signifying completion, with the identification the "runners" at the top of each list.

b. **Electronic evidence.** Among the electronic devices seized were Robinson's iPhone (ending 7257) and his stand-alone "all in one" computer. Forensic analysis of the computer revealed elements of the FSA fraud scheme. On this device were photographs of hundreds of identifying information for individuals in the case to include the PII index cards, high school diplomas, drivers' licenses, social security cards, birth certificates, and passports, and pictures of students which included a "selfie" with the individual holding up the various forms of identification. Also found in the computer were at least 400 completed FSA forms for individuals in the case at various schools, tax-related documentation, and completed coursework. Also identified were banking information for FSA recipients to include hundreds of bank statements, FSA direct deposit requests, and over 50 handwritten receipts signifying runners/students paid in relation to the scheme. Furthermore, there were multiple UIA related documentation out of California, Michigan, Nevada, Pennsylvania.

c. **Text message evidence.** Manual analysis of Robinson' seized iPhone (ending 7257), revealed detailed text conversations as recent as November 6, 2023, the day before the search warrant. The text messages indicated Robinson was facilitating the FSA fraud scheme with other individuals. Text messages conversations consisted of Robinson teaching others how to withdraw funds from the debit cards associated with the case, conversations referring to his FSA fraud scheme as his "school hustle," and conversations to which he admitted to needing to find some schools out of town to "work" particularly those that are Online and don't require on-site testing.

## CONCLUSION

28.     Based on the foregoing evidence, I assert there is probable cause to believe that Brandon Lamar Robinson intentionally perpetrated an FSA fraud scheme against the U.S. Department of Education and that in executing the scheme Robinson caused the interstate transmission of information via wire, in violation of Title 18 U.S.C. § 1343 (Wire Fraud).

Morgan Pilat
Special Agent
U.S. Department of Education
Office of Inspector General

Sworn to before me and signed in my presence
And/or by reliable electronic means.

Elizabeth A. Staford

UNITED STATES MAGISTRATE JUDGE